No. 16-15119-CC

---

**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE ELEVENTH CIRCUIT**

---

STEVEN BIVENS,

Plaintiff-Appellant,

v.

SELECT PORTFOLIO SERVICING, INC.,

Defendant-Appellee.

---

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
Case No. 1:14-cv-01569-ODE

---

# BRIEF OF PLAINTIFF-APPELLANT

---

Wayne Charles
Georgia State Bar No. 515244

Wayne Charles, PC
395 Highgrove Dr.
Fayetteville, Georgia 30215
(770) 241-8936
(770) 460-0412 (fax)

*Attorney for Plaintiff-Appellant*

## CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT

COMES NOW Steven Bivens, Appellant in the above named case, and files this certificate. The following is the list of persons with an interest in this case:

Bivens, Steven, Plaintiff;

Charles, Wayne, Attorney for Plaintiff;

Wayne Charles, PC, law firm for Plaintiff;

Campbell, Elizabeth J., Attorney for Defendant;

Dishun, Alexandra M., Attorney for Defendant;

Locke Lord, LLP, law firm for Defendant;

Select Portfolio Servicing, Inc., Defendant;

SPS Holding Corp., a Delaware corporation that is the 100% owner of Select Portfolio Servicing, Inc.;

Credit Suisse (USA), Inc., which is the 100% owner of SPS Holding Corp.

Credit Suisse AG, which is the joint owner of Credit Suisse (USA), Inc.;

Credit Suisse Group AG, Guernsey Branch, which is the joint owner of Credit Suisse (USA), Inc.; and

Credit Suisse Group AG (CS), of which Credit Suisse Group AG, Guernsey Branch is a branch and which is the 100% owner of Credit Suisse AG; Credit Suisse Group AG is publicly-traded on the New York Stock Exchange under the stock ticker symbol "CS."

Respectfully submitted,

s/Wayne Charles
Wayne Charles

*Attorney for Plaintiff-Appellant*

## STATEMENT REGARDING ORAL ARGUMENT

Appellant requests oral argument. This is a case that will help clarify what information mortgage loan servicers must provide borrowers under RESPA, 12 USC 2605. It will also clarify what discovery is necessary and appropriate in RESPA cases. The decision in this case will affect many borrowers who rely on RESPA to get information from new servicers. Appellant respectfully submits that oral argument will be beneficial to the Court's resolution of this appeal.

# TABLE OF CONTENTS


CERTIFICATE OF INTERESTED PERSONS ....................................................ii

STATEMENT REGARDING ORAL ARGUMENT ......................................... iii

TABLE OF CITATIONS ......................................................................... vii

TABLE OF RECORD REFERENCES ........................................................x

STATEMENT OF JURISDICTION..........................................................xv

STATEMENT OF THE ISSUES........................................................... 1

STATEMENT OF THE CASE ..............................................................2

STANDARD OF REVIEW ....................................................................5

SUMMARY OF THE ARGUMENT .......................................................5

ARGUMENT AND CITATION OF AUTHORITIES...........................................7

I. INTRODUCTION……………………………………………………..7

II. RESPA………………………………………………………………8

III. THE DISTRICT COURT ERRED IN ASSUMING STANDING………9

IV. THE DISTRICT COURT WAS CORRECT WHEN IT ORIGINALLY HELD THAT APPELLANT'S DECEMBER 17, 2012 LETTER WAS A QUALIFIED WRITTEN REQUEST. …..10

a. Mr. Bivens' Written Request For Information Was A QWR. …..10

b. Georgia Law Is Informative On The Relevance Of A Certified, Current Copy Of The Note And The Relevance Of Evidence Of Whom The Note Holder Is. …..14

c. Evidence Produced In This Case Shows That Servicers' Duties Are Far Broader Than Courts Without The Benefit Of Such Evidence Have Held. .....16

d. SPS Did Not "Establish A Separate And Exclusive Office And Address For The Receipt And Handling Of Qualified Written Requests." .....19

i. There was no "separate and exclusive office." .....19

ii. SPS never designated any address for "the receipt of qualified written requests." .....20

V. APPELLANT DID INCUR ACTUAL DAMAGES BECAUSE OF SPS'S FAILURE TO PROVIDE THE INFORMATION REQUIRED BY RESPA. .....22

VI. APPELLANT HAS PRODUCED SIGNIFICANT, PROBATIVE EVIDENCE DEMONSTRATING THE EXISTENCE OF A TRIABLE ISSUE OF FACT ON THE QUESTION OF WHETHER SPS IS LIABLE FOR STATUTORY DAMAGES. .....24

VII. THE DISTRICT COURT ERRONEOUSLY HELD THAT THE TERM "RELATED TO" IS TOO AMBIGUOUS AS A MATTER OF LAW AND ERRONEOUSLY DENIED MOST OF APPELLANT'S FIRST TWO MOTIONS TO COMPEL AS A RESULT. .....25

a. "Related To" Is Not Too Ambiguous As A Matter Of Law. .....25

b. SPS Should Be Equitably Estopped From Claiming "Related To" Is Too Ambiguous Because It Used The Term Itself In Eleven Discovery Requests It Sent To Mr. Bivens. .....29

VIII. THE DISTRICT COURT ALSO ERRED IN FAILING TO GRANT APPELLANT'S MOTIONS TO COMPEL PRODUCTION OF DOCUMENTS RESPONSIVE TO THE FOLLOWING REQUESTS...30

a. Appellant's Second Motion To Compel. .....30

b. Appellant's Third Motion To Compel. .....31

c. Appellant's Fourth Motion To Compel. .....35

IX. THE DISTRICT COURT ERRED IN GRANTING SPS'S MOTION TO QUASH SUBPOENAS *DUCES TECUM* FOR MS. CAMPBELL AND MS. DISHUN. …..37

a. SPS Was Required By RESPA To Investigate And Respond To Plaintiff's Written Requests For Information. …..37

b. The Person Investigating And Answering The Request For Information Is The Proper Person To Question About The Investigation And Response. …..39

c. Elizabeth Campbell Has Responsive Documents Not Made Available By SPS To Plaintiff And Has Relevant Personal Knowledge That Is Not Obtainable From Any Other Person. …..40

d. Alexandra Dishun Has Relevant Personal Knowledge That Is Not Obtainable From Any Other Person. …..41

e. Plaintiff Has Satisfied The Shelton Test That The District Court Applied. …..43

X. THE DISTRICT COURT ERRED IN FAILING TO GRANT APPELLANT'S MOTION FOR ORDER TO SHOW CAUSE WHY WELLS FARGO BANK, N.A., AS TRUSTEE FOR THE SASCO 2007-MLN1 TRUST FUND (WELLS) SHOULD NOT BE FOUND IN CONTEMPT OF COURT FOR FAILURE TO COMPLY WITH SUBPOENA *DUCES TECUM* (SHOW CAUSE MOTION). …..44

a. Wells Willfully Failed To Obey The Subpoena *Duces Tecum* Served On It. …..44
b. Non-Party Wells Never Responded To Appellant's Motion. …..46

XI. THE DISTRICT COURT SHOULD HAVE GRANTED APPELLANT'S MOTION TO REOPEN DISCOVERY. …..48

CONCLUSION…………………………………………………………..........51

CERTIFICATE OF COMPLIANCE ............................................................... 52

CERTIFICATE OF SERVICE ....................................... ………………………52

# TABLE OF CITATIONS


Allison v. McGhan Med. Corp.,
184 F.3d 1300, 1306 (11th Cir. 1999). …..5

Bahamas Sales Assoc., LLC v. Byers,
701 F.3d 1335, 1342 (11th Cir. 2012). …..30

Bank Of The University v. Tuck,
96 Ga. 456, 465, 23 S.E. 467 (1895). …..15

Brooks v. United States,
837 F.2d 958, 961 (11th Cir. 1988). …..5

Chanel, Inc. v. Italian Activewear of Fla., Inc.,
931 F.2d 1472, 1477 (11th Cir. 1991). …..26

Davis v. Greenpoint Mortg. Funding, Inc,
No. 1:09-CV-2719-CC-LTW, 2011 WL 7070222, at *3-4
(N.D. Ga. Sept. 19, 2011). …..12

Ellis v. Gen. Motors Acceptance Corp.,
160 F.3d 703, 707 (11th Cir.1998). …..14

Groover v. Peters,
231 Ga. 531, 202 S.E.2d 413, 414 (1973). …..15

Hardy v. Regions Mortg., Inc.,
449 F.3d 1357, 1359 (11th Cir.2006). …..13

Jurich v. Compass Marine, Inc.
764 F.3d 1302, 1304 (11th Cir. 2014). …..5

Liggion v. Branch Banking *Sc* Trust,
No. 1: 11-CV-1133-WSD, 2011 WL 3759832, at *3
(N.D. Ga. Aug. 24, 2011). …..8

McCarley v. KPMG Int'l,
293 F. App'x 719, 722 (11th Cir. 2008). …..8

McLean v. GMAC Mortgage Corp.,
398 F. App'x 467, 471 (11th Cir. 2010). …..14

Medrano v. Flagstar Bank, FSB,
704 F.3d 661, 667 (9th Cir. 2012). …..16

Roth v. CitiMortgage Inc.,
2013 WL 5205775, at *6 (E.D.N.Y. Sept. 11, 2013) aff'd, 756 F.3d 178
(2d Cir. 2014). ……...21,34

Shelton v. American Motors Corp.,
805 F.2d 1323, 1327 (8th Cir. 1986). …..43

Smith v. Bank of Am. Home Loans,
968 F. Supp. 2d 1159, 1170 (M.D. Fla. 2013). …..8

Tcherepnin v. Knight,
88 S. Ct. 548, 553 (1967). …..13

Upjohn Co. v. U.S.,
449 U.S. 383, 392-395 (1981). …..39

Walton Guano Company v. McCall,
111 Ga. 114, 36 S.E. 469 (1900). …..15

Wilcox, Gibbs & Company v. Aultman,
64 Ga. 544 (1880). …..15

12 U.S.C. § 2605 ("RESPA"). …… *passim*

28 U.S.C. § 1291. …..xv

28 U.S.C. § 1331. …..xv

Fed. R. Civ. P. 12. …..9

Fed. R. Civ. P. 45(g). ……..44,48

Fed. R. Evid. 106. …..50

Local Rule 7.1 (Northern District of Georgia). …..47

24 C.F.R. § 3500.21(e)(1). ...8,19,20,34

O.C.G.A. § 10-6-57. ……...14,15

## TABLE OF RECORD REFERENCES IN BRIEF AND INDEX TO APPENDIX



| Docket No. | Document Name | Brief Page No. |
|---|---|---|
| R 1 | Complaint | *2,3* |
| R 1-4 | Complaint, Ex. D | *12,23* |
| R 1-5 | Complaint, Ex. E | |
| R 1-6 | Complaint, Ex. F | |
| R 1-7 | Complaint, Ex. G | |
| R 21 | Order | *3,12,16* |
| R 27 | Motion to Compel Defendant's Responses to Plaintiff's Interrogatories and Requests for Production. | *3* |
| R 31 | Response in Opposition to Plaintiff's Motion to Compel | |
| R 32 | Reply to Defendant's Response | |
| R 32-1 | Reply, Ex. A | |
| R 32-2 | Reply, Ex. B | |
| R 32-3 | Reply, Ex. C | |
| R 32-4 | Reply, Ex. D | |
| R 42 | Motion to Compel Defendant's Responses to Plaintiff's Second Requests for Production | *3,30,31* |
| R 42-1 | Motion, Ex. A | |

| | | |
|---|---|---|
| R 45 | Response in Opposition to Plaintiff's Second Motion to Compel | *29* |
| R 46 | Reply to Defendant's Response | |
| R 46-1 | Reply, Ex. A | *22,34* |
| R 46-2 | Reply, Ex. B | *29* |
| R 50 | Order | *3* |
| R 61 | Transcript for Motion to Compel Hearing | *passim* |
| R 68 | Motion to Compel Defendant's Responses to Plaintiff's Third Requests for Production | |
| R 68-1 | Reply, Ex. A | |
| R 68-2 | Reply, Ex. B | *33* |
| R 70 | Response in Opposition to Plaintiff's Third Motion to Compel | |
| R 71 | SPS's Motion to Quash Subpoenas *Duces Tecum* | *3* |
| R 71-1 | SPS's Brief | *39,40,41,43* |
| R 72 | Reply to Response in Opposition to Plaintiff's Third Motion to Compel | *7* |
| R 72-1 | Reply, Ex. A | *7,38* |
| R 72-2 | Reply, Ex. B | *7* |
| R 72-3 | Reply, Ex. C | |
| R 72-4 | Reply, Ex. D | |

| | | |
|---|---|---|
| R 74 | Motion to Compel Defendant's Responses to Plaintiff's Fourth Requests for Production | *3,35* |
| R 74-1 | Motion, Ex. A | |
| R 74-2 | Motion, Ex. B | |
| R 77 | Response to SPS's Motion to Quash Subpoenas *Duces Tecum* | |
| R 77-1 | Response, Ex. A | *39,40* |
| R 77-2 | Response, Ex. B | |
| R 77-3 | Response, Ex. C | *40,41,42* |
| R 77-4 | Response, Ex. D | *41* |
| R 77-5 | Response, Ex. E | *42* |
| R 78 | Motion for Order to Show Cause Why Wells Fargo Bank, N.A. … Should Not Be Found in Contempt of Court | *3* |
| R 78-1 | Motion, Ex. A | *11,44,45* |
| R 78-2 | Motion, Ex. B | |
| R 78-3 | Motion, Ex. C | *11,45* |
| R 79 | Response in Opposition to Motion to Compel Defendant's Responses to Plaintiff's Fourth Requests for Production | |
| R 80 | Reply to Response to SPS's Motion to Quash Subpoenas *Duces Tecum* | |
| R 81 | Reply to Response in Opposition to Plaintiff's Fourth Motion to Compel | |

| | | |
|---|---|---|
| R 81-1 | Reply, Ex. A | |
| R 81-2 | Reply, Ex. B | |
| R 81-3 | Reply, Ex. C | |
| R 81-4 | Reply, Ex. D | |
| R 81-5 | Reply, Ex. E | |
| R 81-6 | Reply, Ex. F | |
| R 83 | Response by SPS in Opposition to Motion for Order to Show Cause | |
| R 83-1 | Response, Ex. A | *46* |
| R 83-2 | Response, Ex. B | |
| R 84 | Reply to Response by SPS in Opposition to Motion for Order to Show Cause | |
| R 84-1 | Reply, Ex. A | |
| R 84-2 | Reply, Ex. B | |
| R 84-3 | Reply, Ex. C | |
| R 84-4 | Reply, Ex. D | |
| R 86 | Order | *Passim* |
| R 87-1 | SPS'S Statement of Material Facts | *10,18* |
| R 87-2 | SPS's Summary Judgment Memorandum | *13* |
| R 90 | Response to Motion for Summary Judgment | |
| R 90-1 | Response to Defendant's Statement of Material Facts | |

| | | |
|---|---|---|
| R 90-2 | Plaintiff's Statement of Additional Material Facts | |
| R 90-3 | Response, Ex. A | *16,17,18* |
| R 90-4 | Response, Ex. B | *17* |
| R 90-5 | Response, Ex. C | *18* |
| R 90-6 | Response, Ex. D | |
| R. 90-7 | Response, Ex. E | |
| R 91 | Reply | |
| R 93 | Plaintiff's Motion to Reopen Discovery | *3,49,50* |
| R 93-1 | Motion, Ex. A | *49* |
| R 93-2 | Motion, Ex. B | |
| R 95 | Response in Opposition to Motion to Reopen Discovery | |
| R 95-1 | Response, Ex. 1 | |
| R 96 | Reply to Response in Opposition to Motion to Reopen Discovery | |
| R 97 | Order | *passim* |
| R 99 | Notice of Appeal | |

## STATEMENT OF JURISDICTION

Appellant asserted claims under the Real Estate Settlement Procedures Act (RESPA) 12 U.S.C.§ 2605. Therefore, the district court had original jurisdiction pursuant to 28 U.S.C. § 1331.

This Court has jurisdiction to review the district court's final decision pursuant to 28 U.S.C. § 1291, which provides that: "The courts of appeals . . . shall have jurisdiction of appeals from all final decisions of the district courts of the United States . . . ."

The District Court's final order was filed on July 8, 2016, and Appellant's Notice of Appeal was timely filed on July 24, 2016.

## STATEMENT OF THE ISSUES

1. Whether the District Court erred in assuming standing.
2. Whether the District Court was correct when it originally held that Appellant's December 17, 2012 letter was a QWR, or whether the District Court was correct when it reversed itself in its final Order.
3. Whether Appellant did incur actual damages because of SPS's failure to provide the information required by RESPA.
4. Whether Appellant has produced significant, probative evidence demonstrating the existence of a triable issue of fact on the question of whether SPS is liable for statutory damages.
5. Whether the District Court erroneously held that the term "related to" is too ambiguous as a matter of law and erroneously denied Appellant's first two motions to compel as a result.
6. Whether the District Court also erred in failing to grant Appellant's motions to compel production of documents responsive to other requests for production.
7. Whether the District Court erred in granting SPS's Motion To Quash Subpoenas *Duces Tecum* For Ms. Campbell And Ms. Dishun.
8. Whether the District Court erred in failing to grant Appellant's Motion For Order To Show Cause Why Wells Fargo Bank, N.A., As Trustee For The SASCO 2007-

MLN1 Trust Fund (Wells) Should Not Be Found In Contempt Of Court For Failure To Comply With Subpoena *Duces Tecum* ("Show Cause Motion").

9. Whether the District Court should have granted Appellant's Motion To Reopen Discovery.

**STATEMENT OF THE CASE**

This is a civil action based on the Real Estate Settlement Practices Act ("RESPA"), 12 U.S.C. 2605. Appellant, Mr. Bivens, sent Appellee, Select Portfolio Servicing, Inc. ("SPS") written requests for information which are termed "Qualified Written Requests" ("QWRs") in that Act. Mr. Bivens filed suit under RESPA after SPS failed to provide the information he requested. Mr. Bivens is seeking actual and statutory damages.

This case began with the Complaint filed by Mr. Bivens on May 22, 2014. See R 1. This Complaint alleged that Bank of America, N.A., and SPS had both represented themselves to be servicers of the senior loan on his home ("loan"), and that Real Time Resolutions, Inc., had represented itself to be the servicer of the junior lien on his home. See R 1:3.

None of these defendants were the original lenders with whom Mr. Bivens contracted for his two loans on his home. See R 1. Accordingly, Mr. Bivens was seeking information from each of the defendants, which would show that they had a right to collect payments on his loans. Id. None of the defendants supplied the

requested information. Id.

The Complaint specifically alleged that Mr. Bivens sent QWRs to each of the defendants, but had not received the information he requested as required by RESPA. See R:1. In ruling on motions to dismiss, the District Court dismissed both Bank of America and Real Time Resolutions, but allowed the case to proceed against SPS. See Order, R 21. It is important to note that the defendants who were dismissed were not dismissed because the District Court held that they had provided the requested information. Id.

This case, now just against Appellee, SPS, proceeded to discovery, and Appellant did not get the information he was requesting from SPS. In order to get the requested discovery, he filed four motions to compel, a motion to show cause and a motion to reopen discovery, and Appellant responded to a motion to quash a subpoena *duces tecum* filed by SPS. See R 27, R 42, R 68, R 71, R 74, R 78, and R 93. The first two motions to compel were decided in a hearing with a written order at R 50 and with a transcript detailing the reasoning at R 61. The third and fourth motions to compel, the motion to show cause and the motion to quash were decided without a hearing in a written order at R 86. The motion to reopen discovery was decided with the motion for summary judgment and that holding is in the order at R 97:8. These discovery orders were largely decided against Appellant and are being appealed here. The standard of review for these discovery decisions is abuse of

discretion.

The final order being appealed from is an order granting Appellee's motion for summary judgment at R 97. In this order, the District Court erroneously decided that SPS was the servicer for Mr. Bivens' loan without any evidence and after denying Mr. Bivens' requests for production of documents that could have answered that question. See R 97:9. The District Court assumed that SPS was the servicer of Mr. Bivens' loan, which is a necessary element of this claim, instead of allowing discovery on that issue. See id. The District Court misinterpreted the law in deciding that a written request for information showing who owned Mr. Bivens note was not a QWR. See R 97:9-12. The District Court erroneously decided that SPS had designated an address for a separate and exclusive office for the receipt and handling of QWR's when the facts showed it did not. See id. Again, the District Court made the decision on the issue of a designated address after refusing to allow Appellant discovery on this issue. The District Court misinterpreted the facts in finding that Appellant has not suffered any actual damages. See R 97:13-14. Finally, the District Court erroneously interpreted the facts when it decided that Appellant had not provided sufficient evidence of a pattern or practice of RESPA violations that would entitle him to statutory damages – after the District Court denying Mr. Bivens' discovery attempts to get this information from SPS. See R 97:14. The standard of review for this decision is *de novo*.

## STANDARD OF REVIEW

This Court reviews *de novo* a district court's grant of summary judgment, viewing all facts and reasonable inferences in the light most favorable to the nonmoving party. See Jurich v. Compass Marine, Inc., 764 F.3d 1302, 1304 (11thCir. 2014); Allison v. McGhan Med. Corp., 184 F.3d 1300, 1306 (11th Cir. 1999). The abuse of discretion standard is applicable to the appeal of the discovery orders. See Brooks v. United States, 837 F.2d 958, 961 (11th Cir. 1988).

## SUMMARY OF THE ARGUMENT

The District Court's Order on Appellee's Motion for Summary Judgment was erroneous because it assumed, without evidence, that SPS was actually the servicer for Mr. Bivens' loan. It was erroneous because it misinterpreted RESPA and decided that requests for information about the ownership of the loan are not QWRs. It was erroneous because it decided that SPS had designated an address for a separate and exclusive office for the receipt and handling of QWR's. The District Court erroneously interpreted the facts when it decided that Appellant had not suffered actual damages. And finally, the District Court erroneously interpreted the facts when it decided that Appellant had not provided sufficient evidence of a pattern or practice of RESPA violations that would entitle him to statutory damages.

Along with appealing the grant of summary judgment, Appellant is appealing

several discovery orders. There are three topics of discovery which Appellant asked for, but Appellee refused to provide and the district court erroneously refused to compel. The first topic is the issue of standing, more specifically, the issue of whether SPS is actually the servicer for Mr. Bivens' loan. Instead of compelling Appellant's requested discovery on this issue, the District Court censured Appellant for failing to present sufficient evidence. The second topic is that of whether SPS had designated an address for an exclusive and separate office for the receipt of QWRs. The District Court decided this issue against Appellant without requiring Appellee to provide any of Appellant's requested documentation. The third topic is that of statutory damages. Here again, after refusing to compel necessary discovery, the District Court ruled that Appellant had failed to present sufficient evidence of a pattern and practice of violations to support his claim for statutory damages. Additionally, for Appellant's first two motions to compel the District Court erroneously denied all of Appellant's requests for production that included the words "related to" because it held that "related to" was per se overbroad and unduly burdensome. Appellant is asking this Court to reverse the District Court's orders and grant Appellant the discovery he has asked for.

# ARGUMENT AND CITATION OF AUTHORITIES

## I. INTRODUCTION

In a press release announcing that the Defendant, Select Portfolio Servicing (formerly Fairbanks Capital Corp.), had agreed to "pay $40 million in redress to consumers," the Chairman of the FTC said:

> Consumers should be treated fairly and honestly in the servicing of their loans … . It is particularly important that the Commission stop unfair or deceptive practices in this industry, because consumers have no choice about who services their home loans – and it can be extremely difficult for subprime borrowers to avoid an abusive servicer by refinancing or paying off their loans.

See "Fairbanks Capital Settles FTC and HUD Charges," R 72-1, and see "FTC, Subprime Mortgage Servicer Agree to Modified Settlement," R 72-2 (showing name change from Fairbanks to SPS a few months after the settlement).

Appellant is not here for a payday – RESPA actions allow only minimal damages. Appellant is not here to avoid foreclosure – RESPA actions do not operate as a stay. Instead, Appellant is here because he has sought, but been unable to obtain the most basic information about his loan – who owns it? Despite Mr. Bivens' QWRs and despite this amazingly extensive (and expensive) litigation, SPS has still not provided the information he asked for in order to answer that question, nor has it provided any equivalent evidence. This is not fair and honest treatment, and, as Appellant argues below, it is a violation of RESPA.

## II. RESPA.

The District Court summed up the applicable parts of the Real Estate Settlement Procedures Act in its Order:

> Congress enacted RESPA in an effort to provide consumers with more information on the nature and costs of real estate transactions and to prevent consumers from falling prey to abusive lending practices. See McCarley v. KPMG Int'l, 293 F. App'x 719, 722 (11th Cir. 2008). To that end, RESPA requires a loan servicer to respond to qualified written requests ("QWR") from a borrower. 12 U.S.C. § 2605(e). An inquiry constitutes a proper QWR when it: (1) includes or otherwise enables the servicer to identify the name and account of the borrower and (2) contains a statement of the reasons for the belief of the borrower, to the extent applicable, that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower. Liggion v. Branch Banking *Sc* Trust, No. 1: 11-CV-1133-WSD, 2011 WL 3759832, at *3 (N.D. Ga. Aug. 24, 2011) (Duffey, J.); 12 U.S.C. § 2605(e)(1). A QWR requesting information must seek information related to the servicing of the loan. Liggion, 2011 WL 3759832, at *3; Smith v. Bank of Am. Home Loans, 968 F. Supp. 2d 1159, 1170 (M.D. Fla. 2013) ("A written inquiry that does not relate to servicing is not a QWR.") . Servicing is defined by RESPA as:
>
> > receiving any scheduled periodic payments from a borrower pursuant to the terms of any loan, including amounts for escrow accounts described in section 2609 of this title, and making the payments of principal and interest and such other payments with respect to the amounts received from the borrower as may be required pursuant to the terms of the loan.
>
> 12 U.S.C. § 2605(i)(3). Under RESPA regulations, "a servicer may establish a separate and exclusive office and address for the receipt and handling of qualified written requests." 24 C.F.R. § 3500.21(e)(1) (effective January 16, 2009 to July 15, 2014).
>
> Prior to January 10, 2014, a servicer was required to provide a written response acknowledging a borrower's QWR within 20 days (excluding public holidays, Saturdays, and Sundays) and to respond substantively within 60 days (excluding public holiday, Saturdays, and

> Sundays), providing the borrower with the "information requested or an explanation of why the information requested is unavailable or cannot be obtained by the servicer." 12 U.S.C. §§ 2605(e) (1), (2) (2011) .
>
> On January 10, 2014, the Dodd-Frank Amendments to RESPA became effective and shortened the acknowledgment deadline to 5 days and the substantive response deadline to 30 days. 12 U.S.C. §§ 2605(e)(1), (2).
>
> A servicer who fails to respond in a timely and adequate manner is liable for actual damages suffered "as a result of the failure" and potentially for statutory damages "in an amount not to exceed $2,000" "in the case of a pattern or practice of noncompliance." 12 U.S.C. § 2605 (f)(1).

Order, R 97:6-7 (footnote omitted). This is the law at issue in this case.

## III. THE DISTRICT COURT ERRED IN ASSUMING STANDING.

"If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12. Here the District Court improperly decided the issue of standing by assuming standing – if SPS is not actually the servicer of Mr. Bivens' loan, this Court has no jurisdiction under RESPA. This decision was erroneous because standing is not obvious, and it is not in evidence. The District Court wrote: "The undisputed evidence in the record shows that SPS was assigned the servicing rights from Bank of America, N.A., effective December 1, 2012." Order, R 97:9. What is missing from this "evidence" is any evidence of who the holder of the note was and whether either Bank of America or SPS had authorization from that holder to service the note.

As Appellee wrote in its Statement of Undisputed Material Facts, Mr. Bivens borrowed money from Mortgage Lenders Network – not from Bank of America and not from SPS. R 87-1:1. So, evidence showing a transfer of servicing rights from Bank of America to SPS is meaningless without evidence of a transfer of servicing rights from Mortgage Lenders Network to Bank of America – **and there is no evidence any servicing transfer from Mortgage Lenders Network to anyone**. This is the information Mr. Bivens has been seeking all these years and has been unable to obtain.

The District Court's next statement in the Order is even more troubling: "Although Plaintiff insinuates that there are issues with the chain of title through which SPS acquired the rights to service his loan, he has not produced any evidence to support his claim." Order, R 97:9. This holding is so troubling because Appellant asked for discovery on that particular issue and was refused by Appellee and by the District Court. See Sections VII-XI below.

These discovery orders are challenged in detail below, but it is instructive to look now at some of the information Appellant sought and the District Court deemed irrelevant. In particular, this element of the action could have been made clear had the District Court granted Appellant's Motion for Hearing to Show Cause after the Trustee of the SASCO Trust failed to bring even a single requested document to its

deposition in response to a subpoena *duces tecum*. See Motion, R 78:3. The requested documents were:

1. The original Note and any allonge.
2. All documents showing the purchase of the Note by the Trust.
3. All documents showing the transfer of the Note into the Trust and when the Note was transferred.
4. All documents showing the Trust is the holder of the Note.
5. All documents showing the Trust is the holder in due course of the note.
6. All documents showing Select Portfolio Servicing, Inc., is the current servicer of the Note, showing its duties as the servicer, and showing when it became the servicer.
7. All documents showing the start-up date of the trust.
8. Any Lost Note Certification or Affidavit or any other document stating the Note was lost or destroyed.

See Motion, Ex. A, R 78-1. Instead, the District Court denied the motion because it erroneously decided the documents were "irrelevant." Order, R 86:16.

The Court stated its assumption that SPS was the servicer at the beginning of the discovery hearing for the first two motions to compel: "Well, we know they're the servicer because they sent all the documents – I mean the requests for payment, don't we?" Transcript, R 61:5. The answer to the District Court's question is that we don't know, but it should be really easy to find out. It only stands to reason that SPS has sufficient documentation in its possession to show that it is the servicer; this would be part of the due diligence of any servicer.

In sum, standing is an issue that cannot be waived or assumed; yet in this case the District Court allowed SPS to admit that it was the servicer, and refused to order it to produce the documents Appellant asked for, which would (**or would not**) have

shown that SPS was the servicer. It was an error for the District Court to hold that SPS was the servicer, especially after allowing both the purported servicer and the purported trustee, to refuse to provide the relevant documents Appellant had asked for.

## IV. THE DISTRICT COURT WAS CORRECT WHEN IT ORIGINALLY HELD THAT APPELLANT'S DECEMBER 17, 2012 LETTER WAS A QUALIFIED WRITTEN REQUEST.

### a. Mr. Bivens' Written Request For Information Was A QWR.

The subject of this case is a letter sent on behalf of Appellant to SPS in December 17, 2012 that, among other requests, asked specifically:

> 3. Please provide a certified copy of Mr. Bivens' promissory note in its current condition showing all endorsements and/or any allonge that show that the purported "owner" of the loan maintains legal "holder in due course" status as of today's date."

Complaint, R 1-4 (p. 7 of 7). And, the District Court, in denying SPS's Motion To Dismiss at the start of this litigation, held:

> However, Plaintiff's requests for the identity of the owner of the note and a copy of the note are sufficiently related to loan servicing [Doc. 1-4]. See Davis v. Greenpoint Mortg. Funding, Inc, No. 1:09-CV-2719-CC-LTW, 2011 WL 7070222, at *3-4 (N.D. Ga. Sept. 19, 2011) (Cooper, J.). Therefore, SPS was obligated to respond to these two requests under 12 U.S.C. § 2605(e).

Mot. To Dismiss Order, R 21:16-17. But, in its final order the District Court reversed itself:

> Now, however, at the summary judgment stage, it is clear that the relevant inquiries in the December 17 letter were not "related to servicing" within the meaning of RESPA.

Sum. Judg. Order, R 97:10. The District Court did cite other cases drawing the same conclusion, but entirely failed to explain how the right to collect payments is not related to collecting payments. Id.

As even Appellee correctly acknowledged, a Qualified Written Request must be for "information **relating to** the servicing of such loan" and servicing is "receiving any scheduled periodic payments." See 12 U.S.C. 2605(e)(1)(A) (emphasis added) and (i)(3) and see R 87-2:8. What could be more related to receiving payments than the right to receive those payments? Getting a current copy of the note is the most important step in verifying that a servicer has the right to receive those payments, and is most clearly "related to" receiving those payments.

Further, the District Court's original holding was correct because RESPA is a remedial statute and courts have long held that it is a "familiar canon of statutory construction that remedial legislation should be construed broadly to effectuate its purposes." Tcherepnin v. Knight, 88 S. Ct. 548, 553 (1967). "Related to servicing" is a broad term and should be interpreted broadly to effectuate the statute's purpose. The Eleventh Circuit has also made this point:

> [W]e have held that RESPA is a consumer protection statute. *See Hardy v. Regions Mortg., Inc.,* 449 F.3d 1357, 1359 (11th Cir.2006). **Consequently, RESPA is to be "construed liberally in order to best**

> **serve Congress' intent."** *Ellis v. Gen. Motors Acceptance Corp.,* 160 F.3d 703, 707 (11th Cir.1998) (addressing the remedial nature of the Truth in Lending Act ("TILA")).

McLean v. GMAC Mortgage Corp., 398 F. App'x 467, 471 (11th Cir. 2010) (emphasis added). RESPA's clear intent here is to require servicers, who often are the only contact with the owner of the loan available to the borrower, to provide the information that borrowers need. Verification of ownership is particularly important where the entity who is trying to collect on the loan is not the original lender.

**b. Georgia Law Is Informative On The Relevance Of A Certified, Current Copy Of The Note And The Relevance Of Evidence Of Whom The Note Holder Is.**

It is true that Georgia law is not an authoritative basis of definitions for federal regulations, but, in this case it persuasively shows that a common sense definition for "related to servicing" includes information about the holder of the note. The first such persuasive authority is from Georgia agency law and specifically requires an agent (a servicer) seeking to collect on behalf of another to produce the note or evidence equivalent thereto:

> § 10-6-57. Payment to agent failing to produce obligation, effect of
>
> Where money is due on a written evidence of debt, payment to an agent of the creditor who fails to produce the obligation shall be at the risk of the debtor. Nonproduction of the security shall rebut the implication of authority arising from the agent's employment, and it must be otherwise established.

O.C.G.A. § 10-6-57. Further, Georgia law places an affirmative duty on borrowers to do just what Mr. Bivens is attempting to do – it gives them the obligation to diligently work to be certain that they are making their payments to the actual holder of the note or its authorized agent:

> The maker of a negotiable note and security deed must determine at the time of payment whether the payee is the holder of the instrument or the authorized agent of the holder in order to protect himself against liability for double payment. If the original grantee has assigned the instrument to another, who is a holder in due course, the burden rests with the maker to determine same and pay only the holder or his authorized agent. *See Wilcox, Gibbs & Company v. Aultman*, 64 Ga. 544; *Walton Guano Company v. McCall,* 111 Ga. 114, 36 S.E. 469; *Bank Of The University v. Tuck*, 96 Ga. 456, 465, 23 S.E. 467. There is no evidence in the record which even indicates that Norwood was the agent of the appellant.
>
> The long and short of the matter is that the borrower must be as careful in repaying the debt as the lender presumptively was in making the loan.

Groover v. Peters, 231 Ga. 531, 202 S.E.2d 413, 414 (1973).

RESPA recognizes that many borrowers have no other entity from which to get information other than the servicer. Georgia law shows exactly how important it is for a borrower to get sufficient information to determine if an entity purporting to be the servicer for his loan is actually the servicer, and that the note holder it claims to be servicing for is actually the note holder. Where else would the borrower get this information, if not from the servicer? How could this information not be "related to servicing?"

**c. Evidence Produced In This Case Shows That Servicers' Duties Are Far Broader Than Courts Without The Benefit Of Such Evidence Have Held.**

Many courts, which have ruled on what is and is not related to servicing, have done so without the benefit of evidence from the servicing industry about what servicers actually do – that is to say what duties in actual daily operation are "related to servicing:" See Order, R 21:15-16 (citing cases defining servicing). One such decision is from the Ninth Circuit:

> The statute thus distinguishes between letters that relate to borrowers' disputes regarding servicing, on the one hand, and those regarding the borrower's contractual relationship with the lender, on the other. That distinction makes sense because only servicers of loans are subject to § 2605(e)'s duty to respond—**and they are unlikely to have information regarding those loans' originations.** In summary, we hold that letters challenging only a loan's validity or its terms are not qualified written requests that give rise to a duty to respond under § 2605(e).[5]

Medrano v. Flagstar Bank, FSB, 704 F.3d 661, 667 (9th Cir. 2012) (emphasis added). In fact, in this case, SPS's corporate witness testified that SPS routinely has possession of its borrowers' loan origination documents. See Response to Mot. for S.J., Ex. A, R 90-3 (Syphus Deposition, at 113:12-18, 124:18-21). This evidence would have negated the assumption that was the very foundation of the Ninth Circuit's holding.

SPS's corporate representative was asked at his deposition if the topics in each of the eight requests for information in Plaintiff's December 17, 2015 letter were

topics that would be Qualified Written Requests, and he **admitted that all eight were**. See id. at 35:22–52:3.

Wells Fargo, as trustee for the SASCO 2007-MLN1 Trust, for its corporate deposition actually produced an employee of SPS to testify on its behalf. See R 90-4 (Weinberger Deposition at 4:12–5:25). Ms. Weinberger testified that it was normal for a servicer to testify for the trustee, and the noticed topics she testified on were:

> 1. Is the SASCO 2007-MLN1 Trust Fund ("the Trust") the current holder of the Note?
> 2. Is the SASCO 2007-MLN1 Trust Fund ("the Trust") the current holder in due course of the Note?
> 3. When was the Trust's start-up date?
> 4. Is the Trust a REMIC trust?
> 5. When was the Note put in the Trust?
> 6. From whom did the Trust purchase the Note?
> 7. From whom was the Note transferred to the Trust and when was the Note transferred?
> 8. Who endorsed the note?
> 9. Is Select Portfolio Servicing, Inc., the current servicer of the Note, and when did it become the servicer of the Note?

See id. Just as with SPS's corporate deposition, it is clear from a trustee's deposition that the scope of information to be provided by a servicer to the borrower is much broader than courts have previously thought.

Finally, the Limited Power of Attorney provided by SPS shows its authority and its responsibilities cover a much wider range of actions and documents than

courts have hitherto thought. See R 90-5. Some of the documents the servicer has "full authority and power to execute and deliver on behalf of the Trustee" are:

> (i) All documents with respect to residential mortgage loans serviced for the Trust by the Subservicer which are customarily and reasonably necessary and appropriate for the satisfaction, cancellation, or partial or full release of any mortgages, deeds of trust, or deeds to secure debt upon payment and discharge of all sums secured thereby;
>
> …
>
> (vi) All documents and instruments necessary to effect any assignment of mortgage or assignment of deed or trust;

See id.

Finally, since SPS's corporate representative testified that SPS had the original note at its office in Salt Lake City, and since SPS offered in 2013 to let Mr. Bivens inspect the original note at its office in Salt Lake City, it is ludicrous for SPS to claim that sending a copy of that note to the borrower is not "related to servicing." See R 90-3, (Syphus Deposition at 45:10-16), and see R 87-1 (No. 40). Whom else was Mr. Bivens supposed to get a certified copy of the note from when SPS had it at its office?

In summation, not only was the District Court correct in its original conclusion that Mr. Bivens' request for information about the ownership of his loan in the December 17, 2012 letter was a qualified written request, but the evidence above shows that all of the questions in that letter are "related to servicing."

### d. SPS Did Not "Establish A Separate And Exclusive Office And Address For The Receipt And Handling Of Qualified Written Requests."

#### i. There was no "separate and exclusive office."

The District Court incorrectly ruled that SPS had properly designated an address for the receipt of QWRs in spite of the plain language of the law:

> Under RESPA regulations, "a servicer may establish a **separate and exclusive office** and address for the receipt and handling of qualified written requests." 24 C.F.R. § 3500(e)(1) (effective January 16, 2009 to July 15, 2014).

Order, R 97:7 (emphasis added). The District Court's conclusion, though simply eviscerated the law:

> Additionally, the fact that the address for "Disputes/Inquires" and "General Correspondence" were separate [post office] boxes at the **same physical office**, and attended by the **same employees** does not defeat SPS's summary judgment argument because reading the statute to require a distinct physical location for resolution of QWR's would be nonsensical."

Order R 97:12. (emphasis added).

The District Court's interpretation is incorrect. First because it directly contradicts the plain language of the regulation. Second, it is incorrect because it contradicts the purpose of the law -- there is simply no point in allowing a servicer to treat written requests differently when they come to the same office and are handled by the same employees. The whole point of the regulation is to allow a servicer to set up a special office that is designed to ensure proper handling of written

requests, and such an office would have employees who had special training in answering such requests in accordance with RESPA.

What is the point in having nothing more than a separate post office box if not simply to turn a "safe harbor" into a "gotcha" to use against unwary borrowers? RESPA only allows servicers to establish a safe harbor for responding to written requests when it has actually set up a separate **and** exclusive office. It is undisputed that SPS did not set up such an office.

### ii. SPS never designated any address for "the receipt of qualified written requests."

The District Court held:

> That SPS referred to the address as one for "Disputes/Inquires" rather than expressly for "Qualified Written Requests,:" is of no consequence because the Hello Letter clearly and unambiguously gave notice that the address for "Disputes/Inquires" was exclusively designated for the receipt of written requests."

Order, 97:11-12. However, the law is specific: "a servicer may establish a separate and exclusive office and address for the receipt and handling of **qualified written requests**." 24 C.F.R. § 3500(e)(1). Designating a separate address for "Disputes/Inquires" and even for "written requests" is insufficient because a "qualified written request" is a distinct legal term. It is not just any "dispute" or "inquiry' or any "written request." The way to give notice of a separate and

exclusive office and address for qualified written requests is very simple – you use the words "qualified written request."

When SPS's notice – which uses the term "Disputes/Inquires" [sic] instead of "Qualified Written Request" -- is contrasted with a notice from CitiMortgage, which was found to be sufficient, the difference is stunning:

> For Residential Customers Only: PURSUANT TO § 6 OF RESPA, A 'QUALIFIED WRITTEN REQUEST' REGARDING THE SERVICING OF YOUR LOAN MUST BE SENT TO THIS ADDRESS: CITIMORTGAGE, INC. ATTN: CUSTOMER RESEARCH TEAM, PO BOX 10002, HAGERSTOWN, MD 21749–0002. A 'qualified written request' is written correspondence, other than notice on a payment coupon or statement, which includes your name, account number and the reason(s) for the request.

Roth v. CitiMortgage Inc., 2013 WL 5205775, at *6 (E.D.N.Y. Sept. 11, 2013) aff'd, 756 F.3d 178 (2d Cir. 2014).

SPS has subsequently changed the designation in its notices and no longer uses the term "Disputes/Inquires" [sic] instead of "Qualified Written Request" – below is the old designation of the claimed sole address side by side with the new designation of the same address (the first is from the back of the first Monthly Mortgage Statement sent to Mr. Bivens and the second is from a more recent one):

| | | |
|---|---|---|
| Disputes/Inquires<br>Select Portfolio Servicing, Inc.<br>P.O. Box 25277 | ***versus:*** | Notice of Error or<br>Information Request or<br>Qualified Written Request<br>Select Portfolio Servicing, Inc.<br>P.O. Box 25277 |

See Reply, R 46-1. The difference between these two designations dramatically underscores the issue of whether the old designation met the legal standard and was understandable as meaning the same as the new designation.

Again, the obvious question is why SPS so completely avoided using the words "qualified written request." Was it to avoid alerting borrowers that they had special rights under RESPA while still taking advantage of a "gotcha" opportunity? If SPS was seeking to be clear, it could have easily used both terms. Appellant tried to find the answer to this question in discovery and asks this Court later in this Argument to reverse the District Court's refusal to order SPS to provide this information.

In sum, the District Court ruled erroneously because, while it correctly acknowledged that SPS never used the term "qualified written request" in any document it had sent Mr. Bivens, it incorrectly determined that the **commonly defined** terms "dispute/inquires" and "written requests" are legally synonymous with the **statutorily defined** term "qualified written request."

## V. APPELLANT DID INCUR ACTUAL DAMAGES BECAUSE OF SPS'S FAILURE TO PROVIDE THE INFORMATION REQUIRED BY RESPA.

The District Court held:

> Plaintiff claims that he suffered financial injury because he had to travel and hire an investigator in order to ascertain the true owner of the note [see Doc. 90 at 9] ; however, such expenditures were not related to SPS's purportedly deficient QWR responses. As SPS points out in its brief, the

> undisputed facts demonstrate that at the time that Plaintiff sent the December 17 letter, he and Burnett both possessed a copy of the note.
> …
> Additionally, SPS responded to Plaintiff's request for the note's owner, and as previously discussed, **there is no evidence supporting Plaintiff's suggestion that the SASCO MLNl Trust is not the true owner of the note.**

Order, R 97:13. The District Court's holding accepts that Mr. Bivens spent money trying to ascertain the true owner of the note, but it incorrectly implied that Mr. Bivens had to take SPS's word for who the owner was, and it incorrectly implies that a borrower needs to have evidence of a problem in order to ask for information. Instead, RESPA states that to be a "qualified written request," written correspondence need only "provide[] sufficient detail to the servicer regarding other information sought by the borrower." 12 U.S.C.A. § 2605(e)(B).

First, Mr. Bivens did not just ask for a copy of his note, because, as the District Court stated, he already had one. What he asked for was "a certified copy of [his] promissory note <u>in its current condition</u> showing all endorsements and/or any allonge that show that the purported "owner" of the loan maintains legal "holder in due course" status as of today's date." Complaint Ex D, R 1-4 (marked p. 7 of 7) (emphasis in the original). The point of this request for information was to ascertain who the present holder of the note was. The old copy that Mr. Bivens already had did nothing to establish who the present holder was -- the District Court just seemed to miss this point.

Second, the District Court's finding that Mr. Bivens had no evidence to support his "suggestion that the SASCO MLNl Trust is not the true owner of the note" implies that a borrower has to have some sort of evidence of a problem in order to ask for information under RESPA, but RESPA has no such requirement.[1] RESPA requires servicers to respond to both disputes **and** requests for information.

Mr. Bivens asked for particular information that would have shown who the current holder of his note was. SPS did not send him this information. As a direct result of this failure, Mr. Bivens spent money trying to find this information on his own – these are actual damages.

## VI. APPELLANT HAS PRODUCED SIGNIFICANT, PROBATIVE EVIDENCE DEMONSTRATING THE EXISTENCE OF A TRIABLE ISSUE OF FACT ON THE QUESTION OF WHETHER SPS IS LIABLE FOR STATUTORY DAMAGES.

The District Court incorrectly held that, based on the testimony from SPS's 30(b)(6) witness, Mark Syphus, "no reasonable factfinder could conclude" that SPS has a pattern or practice of failing to adequately respond to RESPA requests. Order,

[1] Mr. Bivens did in fact obtain evidence that the SASCO trust was not the holder of his note. The District Court simply ignored the evidence that a Merrell Lynch trust was the holder of his note in its holding here after acknowledging it earlier in denying Mr. Bivens' Motion to Reopen Discovery:

> SPS produced the first page of a trust document from Merrill Lynch Mortgage Investors Trust, Mortgage Loan Asset-Backed Certificates, Series 2007-MLNl, while SPS had previously indicated that the note was owned by the SASCO MLNl Trust.

See Order, R 97:8 and see further discussion below in Section XI.

R 97:14. However, when that testimony is viewed in the light most favorable to Mr. Bivens, it is simply impossible to come to such an absolute conclusion:

> Q. And sometimes then you do not send a copy of the note; is that accurate?
> A. Sometimes we do not; sometimes we do.
> Q. So it's your policy that sometimes you do not send the note in response to a request for a copy of the note?
> MS. CAMPBELL: Object to the form of the question. Mischaracterizing the witness's testimony.
> THE WITNESS: It is on a case-by-case basis.
> MR. CHARLES:
> Q. Okay. But when it is not provided, that is not a violation of SPS's policy; is that accurate?
> A. Correct.

Order, R 97:14. It is noteworthy that the District Court failed to explain its reasoning.

Certainly, Mr. Syphus was trying to be cagey with his answer, but a reasonable factfinder could easily conclude that if it was not a violation of SPS's policy to fail to send a copy of the note when it was requested, then it was SPS's policy that its employees did not have to send such copies. His statements that "sometimes we do not and sometimes we do," and "[i]t is on a case by case basis" could reasonably mean fifty percent of the time or more and could be reasonably believed to mean that they commonly and routinely do not send such copies.

Further, Appellant attempted to get discovery on SPS's pattern and practice of responding to QWRs, but SPS refused to provide it and the District Court refused

to order it. This is some of the discovery that Appellant is asking this Court to order later in this Argument below.

The District Court Correctly stated the evidentiary standard in its Order: "At that time, the nonmoving party must present 'significant, probative evidence demonstrating the existence of a triable issue of fact.'" Order, R 97:5 (citing Chanel, Inc. v. Italian Activewear of Fla., Inc., 931 F.2d 1472, 1477 (11th Cir. 1991)). Mr. Syphus' testimony is sufficient to present such "significant, probative evidence." Admittedly, at a trial more testimony on this subject would be useful, but it is not possible to conclude at the summary judgment stage, with the evidence interpreted in favor of the nonmovant, that this testimony fails to support Mr. Bivens' claim of a pattern and practice as a matter of law or that a ruling could be made against Mr. Bivens without allowing him the discovery he asked for.

## VII. THE DISTRICT COURT ERRONEOUSLY HELD THAT THE TERM "RELATED TO" IS TOO AMBIGUOUS AS A MATTER OF LAW AND ERRONEOUSLY DENIED MOST OF APPELLANT'S FIRST TWO MOTIONS TO COMPEL AS A RESULT.

### a. "Related To" Is Not Too Ambiguous As A Matter Of Law.

The District Court's order denying most of Appellant's first and second motions to compel was based primarily on the District Court's holding that the term "related to" was too ambiguous and so the District Court denied Appellant's motions to compel in the case of every interrogatory and request for production that contained that term.

Specifically, in Appellant's first motion to compel production, the District Court denied Appellant RFP No. 1 primarily because it used the term "related to:"

> Having said that, though, I do think request number 1 is overly broad and unduly burdensome. I think in some part this is a function of the use of the phrase "**related to**." That is terribly vague, and I think it can't be fairly determined what is really related to and what is not. So I am sustaining the objection on the basis that the request is overly broad and unduly burdensome, and actually I think not properly limited as to time or scope, as well.
> …
>
> All right. Now, **I think that really determines the rulings on the rest of the items in plaintiff's request for production,** the first request for production.

Transcript, R 61:19-20. Then, the District Court went on to deny Appellant's next seven RFPs for the **sole** reason that they contained the term "related to:"

> Again in request number 2 the term "**related to**," copies of all documents **related to** policies and procedures you have corresponding to QWR's. If this request asks for documents **reflecting** policies and procedures, I would not overrule the objection, but as things stand –
>
> With respect to number 3, it's the same thing, all documents **related to** violations or allegations of violations of the policies and procedures you have for responding to QWR's. If you define the words "**related to**" broadly, which I think perhaps plaintiff is doing, this request has no bounds.
>
> With respect to number 4, **same ruling**, produce copies of all documents **related to** state or federal government investigations or inquiries, I think that request is much too broad, and I think answering it would be unduly burdensome to SPS.
> Mr. Charles: But again, your honor, **reflecting would be different?**
> The Court: I'm not going to do this this way. It's your obligation as plaintiff's counsel to phrase things in a way that's correct.

> Number 5 . . . Well, again, we get to the issue of what does "**related to**" mean . . . But, again, the key component here is the impermissible use of the words "related to."
>
> Same ruling on number 6 **related to** QWR's, I think that's overly broad, unduly burdensome. So it's out.
>
> Request number 7, produce copies of all documents **related to** QWR's that you did not respond to. Again, the same problem with overbreadth, and I also think -- well, that's my ruling on that.
>
> Request number 8 says please produce copies of all documents **related to** QWR's to which a part of your response stated that because plaintiff had initiated litigation regarding the loan, the issue had been assigned to outside counsel. I think the phraseology "copies of all documents **related to** QWR's" is impossibly broad, and I will not compel further response to that.

R 61:20-22,38 (emphasis added).

The District Court ruled the same way on the production requests from Appellant's second motion to compel:

> Number 1, please produce copies of all documents **related to** the determination of the wording, textual design and layout of any document you sent Mr. Bivens that designated a specific address or disputes and inquiries like document SPS45. Again I think the words "**related to**" are fatal to this request.
>
> With respect to request number 2, please produce copies of all documents related to policies and procedures you have for responding to correspondence sent to P.O. Box 65250. Again the phrase "**related to**" is too broad. I will not compel a further response to request number 2.
>
> Same ruling on number 3. It's too broad and ambiguous.
>
> With respect to number 4, the same ruling all documents **related to** the decision to designate, who knows what that might include. So I will not compel a further response there.

> Please produce copies of all documents **related to** the issues, this is number 5, of providing an exclusive address for qualified written responses. Same ruling here. It's too broad. I won't compel a further response.

Id., R 61:39 (emphasis added).

The term "related to" is a normal legal term that is widely used and understood by attorneys. Most obviously here, it is a key term in the law controlling this case and is used to define QWRs: "information **relating to** the servicing of such loan."12 U.S.C. § 2605(e)(1)(A) (emphasis added). The District Court's denial of Appellant's motion to compel production of these documents on this basis was erroneous.

**b. SPS Should Be Equitably Estopped From Claiming "Related To" Is Too Ambiguous Because It Used The Term Itself In Eleven Discovery Requests It Sent To Mr. Bivens.**

Appellee argued that it could not understand requests that use the term "related to:"

> The phrase "related to" is not only **impossible to concretely define**, but it is **also subject to regular abuse or misuse** and is a potential **tool for harassment** because it makes the category of responsive documents nebulous."

See Response, R 45:9 (emphasis added). This argument from SPS is as histrionic as it is disingenuous. Appellee's disingenuousness is dramatically exemplified by its own use of the term "related to" **eleven times** in its Requests For Production to Plaintiff. See Reply, 46-2 (RFP Nos. 4,5,6,11,12,17,19,20,21,23 and 28).

Counsel for Appellant made this argument again at the hearing, but the District Court refused to consider it:

> Mr. Charles: may I say one thing related to this is that the defendants have used the term "related to" 11 times in their --
> The Court: I'm not interested. I'm not interested in that.

Transcript, R 61:24. But, the District Court should have been interested. Appellee received the benefit of its use of the term in getting the discovery it was asking for, and then SPS was able to benefit by using it to entirely refuse to provide discovery when Appellant used the same term. This is unfair and should be equitably estopped: "The doctrine of equitable estoppel is grounded in fairness." Bahamas Sales Assoc., LLC v. Byers, 701 F.3d 1335, 1342 (11th Cir. 2012). The District Court's order on this issue should be reversed.

## VIII. THE DISTRICT COURT ALSO ERRED IN FAILING TO GRANT APPELLANT'S MOTIONS TO COMPEL PRODUCTION OF DOCUMENTS RESPONSIVE TO THE FOLLOWING REQUESTS.

### a. Appellant's Second Motion To Compel. (R 42)

The District Court erred in failing to grant Appellant's motion to compel production of documents showing SPS actually was the servicer of Mr. Bivens' loan from Appellant's second motion to compel:

> [The Court:] then moving on to request number 8, **please produce copies of all documents showing you have a right to service a loan to Mr. Bivens** connected to the security deed filed in Gwinnett county, Georgia. I'd like to hear from defense counsel on this. I'm not too sure.
>
> . . .

> Ms. Campbell: all documents showing that we have the right to service the loan**, I would present to the court that we have produced documents relating to our right to service the loan**, and we've produced the documents relating to the loan itself. So to the extent that he's going to continue to push on this, I think it's compound and duplicative. It's improper and harassing. **I think we've already produced everything**, and I don't think it's relevant.
>
> The Court: I think what is key here, where your legitimate interest lies is in this chain of title business, you know, who owned what, and **I'm going to grant your motion on request number 8, but only to the extent of requiring** that the, what I'm going to refer to as the chain of title stuff, and even though I hear you saying you've given it to Mr. Charles before, you're going to have to file with the Court **a written response that shows what you are giving to him in response to this interrogatory** so that the court's records will be clear. You don't have to give me copies of all the documents.

Transcript, R 61:40-41,43 and Motion, R 42:13. It is now clear from the SPS's inability to allege in its Statement of Undisputed Material facts that it was the servicer of Mr. Bivens' loan, and it is now clear from the District Court's inability to cite any evidence showing that SPS was Mr. Bivens loan servicer in its Order that SPS's attorney's statement was false – SPS never produced documents the relevant documents. Appellant's motion to compel production of these documents should have been granted entirely, instead of ordering just the production of a list of documents which were not actually responsive to this request.

**b. Appellant's Third Motion To Compel. (R 68)**

> **REQUEST NO. 1:** Please produce copies of all documents that reflect policies and procedures You had in effect for responding to QWRs on December 17, 2012.

This request for policy information goes to the heart of proving that SPS did or did not have a practice of failing to answer certain QWRs. The District Court erred in holding that this request was overbroad. Order, R 86:3.

> **REQUEST NO. 3:** Please produce copies of all documents that reflect state or federal government investigations or inquiries related to Your QWR responses that were ongoing on December 17, 2012, or were started since then.

This request is a very efficient way to gather information about statutory damages because this information has already been compiled by SPS in response to other litigation or requests from state or federal authorities. The District Court erred in holding that this request was overbroad and burdensome. Order, R 86:4.

> **REQUEST NO. 4:** Please produce copies of all documents where a borrower on a loan serviced by SPS wrote to SPS requesting the identity of the owner of the note between December 17, 2012 and June 16, 2013, and produce copies of all responses to those written requests.

> **REQUEST NO. 5:** Please produce copies of all documents where a borrower on a loan serviced by SPS wrote to SPS requesting a copy of the note between December 17, 2012 and June 16, 2013, and produce copies of all responses to those written requests.

These requests are both necessary for the same reason. Appellant needs documents sufficient to show a pattern or practice of RESPA violations for statutory damages and he is asking only for QWRs with a request similar to the one at issue in the present case, and only for a six month period. Appellee's actual responses to similar requests for information will be the best way to show if there is or is not a

pattern and practice of RESPA violations. The District Court erred in holding that these requests were unduly burdensome. Order, R 86:4-5.

> **REQUEST NO. 6:** Please produce copies of all documents reflecting the determination of the wording, textual design and layout of any document you sent Mr. Bivens that designated a specific address for disputes and inquiries (like the document SPS 45). This request only encompasses documents reflecting the determination of the wording, design and layout of those parts of the documents which are part of the designation of that address or are part of the instructions for using that address.

Here the evidence being sought is relevant to whether SPS did actually provide notice of a specific and exclusive address for QWRs. It is not obvious from the face of the notice that it is even intended to provide a special address for qualified written requests, as Defendant's counsel contends. See R 68-2 (SPS 45). As already discussed above, SPS has subsequently changed the designation in its notices and no longer uses the term "Disputes/Inquires" [sic] instead of "Qualified Written Request" – below is the old designation of the claimed sole address side by side with the new designation of the same address (the first is from the back of the first Monthly Mortgage Statement sent to Mr. Bivens and the second is from a more recent one):

| | | |
|---|---|---|
| Disputes/Inquires<br>Select Portfolio Servicing, Inc.<br>P.O. Box 25277 | ***versus:*** | Notice of Error or<br>Information Request or<br>Qualified Written Request<br>Select Portfolio Servicing, Inc.<br>P.O. Box 25277 |

See Reply, R 46-1. The difference between these two designations dramatically underscores the issue of whether the old designation met the legal standard and was understandable as meaning the same as the new designation.

The obvious questions here, and the ones for which this request seeks documents, is why did SPS, at the time, not use the words "qualified written requests" as the Rule does? See CFR § 3500.21(e)(1). Why did SPS use the term "Disputes/Inquires" [sic]? Why did SPS omit any reference to RESPA in its instructions?" The court that decided Roth v. CitiMortgage Inc., found differences in designations to be important:

> Unlike the letter in *Catalan,* this notice specifically references RESPA and QWRs and clearly designates a single address to which QWRs "must" be sent. Furthermore, the notice is not "buried" or "conveyed subtly" … .

Roth v. CitiMortgage Inc., 2013 WL 5205775, at *6 (E.D.N.Y. Sept. 11, 2013) aff'd, 756 F.3d 178 (2d Cir. 2014). The Roth court had also held: "The material issue is whether the notice was effective … ." Id. This request should shed light on the question of whether SPS honestly intended to provide "effective" notice, or if SPS intended to provide a notice that was not "effective." The District Court erred in holding that this request was not relevant. Order, R 86:5-6.

> **REQUEST NO. 8:** Please produce copies of all documents reflecting policies and procedures You had for responding to correspondence sent to PO Box 65250 in Salt Lake City, on December 17, 2012.

> **REQUEST NO. 9:** Please produce copies of all documents reflecting policies and procedures You had for responding to correspondence sent to PO Box 65277 in Salt Lake City, on December 17,2012.

> **REQUEST No. 10:** Please produce copies of all documents that reflect the reasons for SPS's decision to designate a different address for "General Correspondence" and for "Disputes/Inquires. " [sic].

In these three requests Appellant seeks Appellee's policies for responding to QWRs submitted to the address labeled "General Correspondence" and for responding to QWRs submitted to the address labeled "Disputes/Inquires"[sic] in order to see what the differences are, and it seeks the documents showing the reasons for SPS's labeling.

The District Court erred in holding that this request was cumulative because Appellant had been able to ask Appellee's corporate representative questions about this – Appellant is not required to rely on the limited, and possibly inaccurate, testimony of a corporate representative as his sole source of information when relevant documentary evidence may be available. Order, R 86:6-7.

**c. Appellant's Fourth Motion To Compel. (R 74)**

> **REQUEST NO. 1:** Please produce copies of all written requests for information sent to SPS by or on behalf of Plaintiff and copies of all of the responses (and information provided with those responses) from SPS or its agents to those written requests.

This Request is the most basic, straightforward due diligence request possible in a case about Qualified Written Requests and requires only a minimal effort on the part of SPS.

The District Court erroneously held:

> Plaintiff admits that SPS has already produced its written responses to Plaintiff, and this Court will not compel SPS to produce Plaintiff's requests to SPS for information because those documents were generated by Plaintiff himself, and thus in his possession, and they are outlined in his Complaint.

Order, R 86:7-8. The reason the District Court erred is that it assumed facts that were not in evidence, and it based its holding on those facts. First, Appellant did not admit "that SPS had already produced its written responses to [him]" because it had not, and second, Appellant did not have documents that were sent by him, in particular he did not have some the ones sent by others on his behalf. And, the District Court erroneously assumed that the documents listed in Appellant's Complaint were all of the QWRs he sent. Order, R 86:7-8.

> **REQUEST NO. 5:** Please produce copies of all notes and emails about Plaintiff's account, including, but not limited to any "Contact History Report."

This Request is for Appellant's account notes and emails from SPS, which may show when requests for information were received and were (or were not) responded to. It cannot take more than five minutes to open Appellant's account on the computer and print the account notes, and another five to print out the emails.

The District Court erred in accepting SPS's offer to produce only two months of its contact history, finding the full request to be overly broad and burdensome.

Order, R 86:10-11. In particular, the District Court's limitation of the contact history to two months is mystifying – how burdensome could it be to print the whole document?

> **REQUEST NO. 6:** Please produce copies of all recordings of phone conversations with Plaintiff.

Any recordings of Appellant's phone conversations could be important in this case where the issue is lack of responsiveness to his requests for information. Plainly such recordings are designed to be easily accessible when needed, especially for litigation. The District Court erred in holding that these recordings were irrelevant – they are relevant to Appellant's request for statutory damages. Order, R 86:11.

## IX. THE DISTRICT COURT ERRED IN GRANTING SPS'S MOTION TO QUASH SUBPOENAS *DUCES TECUM* FOR MS. CAMPBELL AND MS. DISHUN.

### a. SPS Was Required By RESPA To Investigate And Respond To Plaintiff's Written Requests For Information.

RESPA requires that a loan servicer who receives an inquiry from a borrower, "after conducting an investigation, provide the borrower with a written explanation or clarification… ." 12 U.S.C.A. § 2605(e). The fact that attorneys Campbell and Dishun did the investigations and the responses does not allow SPS to evade discovery that is not only allowed, but that is standard due diligence.

It may be true that, as Appellant contended: "In crafting responses, SPS's

counsel also identified which documents of many to review and rely upon. They did so in the context of ongoing litigation and in anticipation of future litigation." … . R 71-1:13. But, they also stepped into SPS's shoes by directly responding to Mr. Bivens' QWR's in order to comply with SPS's RESPA obligations, instead of just advising SPS on how to respond. The fact that SPS's attorneys wore two hats in responding to Appellant's requests for information does not mean they can use their attorney hat to evade the responsibilities they incur while also wearing an SPS hat to do the investigations and to provide the responses SPS was required to provide.

Appellee stated: "In responding to Plaintiff's letters, SPS's counsel **had to** interpret RESPA, advise SPS regarding its statutory obligations, and draft responses to protect SPS's interests." R 71-1:13 (emphasis added). This statement is simply not true. SPS's counsel did not **have to** respond to Appellant's requests. This is a normal function carried out by non-lawyers at servicers, including SPS, on a daily basis. Appellee's counsel could easily have **advised** their client, **assisted** in the investigation and **assisted** in preparing the responses, but they did not – instead they stepped directly into the shoes of their client and wrote the actual responses; and, presumably, did the actual investigations. They did not **have to** do so, they simply chose to do so. And, in so doing, they cannot claim attorney-client privilege any more than the other SPS employees performing the exact same function could.

**b. The Person Investigating And Answering The Request For Information Is The Proper Person To Question About The Investigation And Response.**

The big question that Appellee's Memorandum does not answer is: Who is the person most knowledgeable about the substance and accuracy of the responses and the reasons for those responses? The answer to that is easy: The person writing the responses. That is the person to be deposed, regardless of whether it is a corporate employee or outside counsel.

The actions of Appellee's counsel stand in stark contrast to the action protected in the cases cited by Appellee. Most specifically, it is instructive to contrast Appellee's characterization of the holding in Upjohn Co. v. U.S., as: "refusing to compel disclosure of communications between corporate employees and corporate counsel where purpose of communications was to **assist** corporation to determine how to **obey** the law." R 71-1:12-13 (emphasis added). In the present case, Appellee's counsel did more than "assist;" they are the ones who actually "obeyed" the law, and they are just as properly deposable as the corporate employees were in that case.

SPS identified its corporate employees who provided responses to Appellant as potential witnesses. In response to Appellant's Interrogatory asking for the names "of persons having relevant knowledge of the facts and issues involved in this action.," SPS listed five of its employees. See Response R 77-1 (Supplemental

Response). The summaries of their "relevant knowledge" were remarkably consistent – each of them had responded to requests for information about Appellant's loan, just as Ms. Campbell and Ms. Dishun did. See **id**.

### c. Elizabeth Campbell Has Responsive Documents Not Made Available By SPS To Plaintiff And Has Relevant Personal Knowledge That Is Not Obtainable From Any Other Person.

Elizabeth Campbell, told Appellant's counsel at Mr. Bivens' deposition on July 13, 2015, that she had responded to the December 17, 2012 request for information with several emails to Mr. Bivens' attorney at the time, Nancy Burnett. See R 77-3 (Declaration of Wayne Charles ¶ 4). She further stated that she had not turned those over to Plaintiff's counsel in discovery because they were in **her** files and not in **SPS's** files. See id. This contradicts two of Appellee's statements (**unsworn**) it its Motion:

> Plaintiff is in possession of the correspondence he sent to SPS during the course of this litigation, and all responses to those letters that were sent by either Ms. Campbell or Ms. Dishun.
>
> Since Plaintiff already has the actual correspondence that has been exchanged between him (and his lawyers) and SPS's outside counsel, the only information he could obtain at a deposition of SPS's counsel would be information protected by the attorney-client privilege and/or the work product doctrine.

R 71-1:12-13.

Three days later at Defendant's 30(b)(6) deposition, Ms. Campbell told Appellant's counsel that she had also responded to the December 17, 2012 letter

with several phone calls to Appellant's former attorney Nancy Burnett. See R 77-3 (Declaration of Wayne Charles ¶ 5).

Appellant attempted to get this information from SPS's 30(b)(6) witness, Mark Syphus, but was unable to. When asked about responses by SPS given by outside counsel to the December 17, 2012 letter, Mr. Syphus stated that he had not reviewed any such documents and that he did not know if a response from outside counsel had been sent. See R 77-4 (Syphus Deposition, pp. 15:3-16:5).

Appellee informed the District Court that one of the reasons for allowing the deposition of litigation counsel is the inability to obtain the information from another source. See R 71-1:9 ("no other means exist to obtain this information than to depose opposing counsel"). That standard has been met because SPS's 30(b)(6) witness was unaware of Ms. Campbell's responses, because those responses have never been produced to Appellant, and because she is clearly the best witness as to the substance and the accuracy of her telephoned responses to the December 17, 2012 letter, which is the central issue in this case.

#### d. Alexandra Dishun Has Relevant Personal Knowledge That Is Not Obtainable From Any Other Person.

Ms. Dishun, the other outside counsel for SPS, responded on behalf of SPS to Plaintiff's written request for information dated March 25, 2015 in her letter dated June 3, 2015:

> **Request No. 1.** On the attached letter from you dated December 15, 2012, the letter states: "We are unable to assist you because: Loan is not Modifiable." Why is this loan not modifiable?
>
> SPS's records reflect that SPS was unable to approve a modification of Mr. Bivens' home loan because SPS did not receive some of the documents it requested during the loan modification review process.

See R 77-5 (Response Letter).

Yet, when asked that same question, SPS's 30(b)(6) representative, only one month later, gave a different answer: "In reviewing this and our business records, the representative, it appears, may have entered the wrong code, stating that the loan is not modifiable." See R 77-3 (Deposition of Mark Syphus at p. 95:7-9). Again, when Mr. Syphus was asked: "So to the best of your knowledge, the reason it says loan is not modifiable here is simply a mistake?" he answered: "I believe it was an employee error." See id. at p. 95:22-25.

One of these answers is inaccurate, and possibly both are inaccurate. Mr. Bivens' is entitled to an accurate response to his QWR. Ms. Dishun's deposition is necessary for Plaintiff to attempt to find out what the correct information is, and whether incorrect information was given to Mr. Bivens intentionally by either Mr. Syphus or Ms. Dishun.

In support of its Motion Appellee argued:

> SPS expects Plaintiff will argue that it needs these depositions to prove his entitlement to statutory damages in this case. But if Plaintiff desires to show a pattern or practice of noncompliance with RESPA, he must show actual infractions. If there are such infractions, **they will be**

**apparent from the face of the documents**.

R 71-1:16 (emphasis added). This claim assumes that the responses are accurate, and that there are no intentionally or unintentionally erroneous statements in the documents. Here, plainly, the infraction is **not apparent** from the face of the document. Mr. Bivens is entitled to an accurate response to his QWR. Erroneous statements are not an adequate response, and there is evidence of a least one erroneous statement. Ms. Dishun's deposition is needed to help determine which answer is correct or if neither is. Further, it is only basic due diligence to, at least, question the accuracy and completeness of the rest of the responses – just as would be done with any other SPS employee who provided a RESPA mandated response.

### e. Plaintiff Has Satisfied The Shelton Test That The District Court Applied.

The District Court applied the three-part test from Shelton v. American Motors Corp.: "Under that test, the party seeking the lawyer's deposition must satisfy the burden of showing that "(1) no other means exist to obtain this information than to depose opposing counsel, (2) the information sought is relevant and non-privileged; and (3) the information is crucial to the preparation of the case." Order, R 86-14.

Here, Plaintiff has met that standard because: 1. No one else at SPS has the knowledge about Ms. Campbell and Ms. Dishun's responses that they have; 2. Responses to QWRs are at the heart of this case, both on their own and as evidence

of a pattern and practice as is required for statutory damages, they are not privileged because they were already sent to Mr. Bivens, the information in the responses was based on non-privileged account and loan documents and because responding to QWR's is a standard non-attorney function; and 3. SPS's responses to Plaintiff's QWR's and their adequacy are what this case is all about.

Appellee may not shield itself from discovery by assigning its attorneys to perform its statutory obligations instead of assigning regular corporate employees to perform its obligations. Appellee's Motion To Quash should have been denied.

## X. THE DISTRICT COURT ERRED IN FAILING TO GRANT APPELLANT'S MOTION FOR ORDER TO SHOW CAUSE WHY WELLS FARGO BANK, N.A., AS TRUSTEE FOR THE SASCO 2007-MLN1 TRUST FUND (WELLS) SHOULD NOT BE FOUND IN CONTEMPT OF COURT FOR FAILURE TO COMPLY WITH SUBPOENA *DUCES TECUM* ("SHOW CAUSE MOTION").

### a. Wells Willfully Failed To Obey The Subpoena *Duces Tecum* Served On It.

Wells willfully failed to obey the subpoena *duces tecum* served on it on June 12, 2015. See Motion R 78-1 (Wells' Subpoena). The Subpoena called for the deposition of a 30(b)(6) witness for Wells on July 6, 2015, and called for Wells to bring certain documents to that deposition. See id. Wells did not appear for that deposition, nor did it send Plaintiff the requested documents. Further, Wells did not make any objections to the Subpoena within fourteen days of service, as required by Fed. R. Civ. P. 45(c)(2)(B).

Appellee SPS did eventually produce one of its own employees purporting to be a witness for Wells in Salt Lake City, Utah, on September 16, 2015. See R 78-3 (Deposition of Diane Weinberger). However, Wells still did not comply with the subpoena because the witness did not have knowledge of the topics listed in the subpoena. In one specific example, the witness did not have knowledge about Topic No. 5: "When was the Note put in the Trust?" See R 78-1, and see R 78-3 (pp. 9:15-12:1). The witness was only able to testify as to when the Note was **supposed** *to have been* put in the trust, not when it **actually** *was* put in the trust. See R 78-3 (pp. 9:15-12:1). This is critical information to the case because: if the Note was not in the Trust when Appellant's December 17, 2012 request for information was sent, then Appellee was not the servicer of Appellant's loan, and Appellant has no justiciable RESPA claim. A major reason for deposing a witness from Wells was to find out when (or if) the Note was **actually** put in the Trust, not to find out when it was **supposed** to be put in the Trust.

Further, at this deposition, Wells refused to provide any of the documents listed in the Subpoena. See R 78-3 (p. 7:5-9). This is particularly important because Plaintiff intended to question Wells' witness about those documents at the deposition. Accordingly, this deposition failed to meet Wells' obligations under the Subpoena almost as completely as the initial deposition which Wells missed entirely.

**b. Non-Party Wells Never Responded To Appellant's Motion.**

Wells did not respond to Appellant's Motion -- instead, the Appellee responded. The document it filed was titled: "Defendant's Opposition," instead of "Wells' Opposition." See Opposition, R 83:1. SPS's filing stated: "Defendant Select Portfolio Servicing, Inc. ("SPS") hereby files its Opposition to the Motion … ." See id. Appellee did acknowledge that the "Motion for Show Cause Order [was] directed at non-party Wells Fargo Bank, N.A., as Trustee for the SASCO 2007-MLN1 Trust Fund ("Trustee") … ," but did not explain why it responded instead of Wells. See id. Further, the response was signed by attorney Elizabeth Campbell who listed herself and her associate, Alexandra Dishun, as "Attorneys for Defendant SPS," not "Attorneys for Wells." See id. at p. 11. Finally, there was nothing in the document to suggest that the response was in anyway submitted on behalf of Wells by SPS. See id.

Despite Wells' failure to respond the District Court denied Appellant's motion, and it did so for two reasons: it held the information sought was irrelevant and it held that Appellant had failed to object to the SPS's attorney's objection:

> Because the subpoena sought irrelevant information and Plaintiff voiced no objection to the parties' proposed compromise --which was clearly intended to be executed in lieu of the Wells Fargo subpoena--Plaintiff's Motion for Order to Show Cause is DENIED..

Order, R 86:16.

First, this decision was incorrect because, as previously shown above in this Appeal, the requested documents were clearly relevant to the issue of standing – they could have shown whether SPS was or was not the servicer for Mr. Bivens' loan.

Second, this decision was incorrect because counsel for Mr. Bivens had no duty to object to the other counsel's objection. Were this to be the rule, depositions would devolve into one long string of objections and counter-objections.

Third, this decision was incorrect because there was no such compromise. How did the District Court know there was a "compromise" anyway? It erroneously accepted as factual the unsworn statement of SPS's attorney as evidence when it concluded that there was a compromise. See Local Rule 7.1. The whole notion that Appellant's counsel would fly from Atlanta to Salt Lake City, where counsel for SPS would suddenly announce that no documents would be provided, and that this surprise was a "compromise" is ludicrous on its face. This ambush was appalling. Had that objection been made prior to the flight, Appellant would not have wasted money sending his attorney across the country for a pointless deposition.

And, most importantly, **Wells** did not claim there was any such deal – it was **SPS's** attorney who claimed there was a "compromise" – nowhere on record is there any statement that attorney Elizabeth Campbell was representing Wells at the deposition, and she certainly did not respond to Appellant's motion on their behalf.

The District Court did acknowledge Wells' complete failure to respond:

> Wells Fargo has not yet appeared on its own in this action. Plaintiff argued in reply, and this Court agrees, that **it was inappropriate** for SPS to respond to the instant Motion on behalf of Wells Fargo.

Order, R 86:15 (emphasis added). But, Wells' failure to appear was more than inappropriate, once it was clear that the deposition topics and requested documents were relevant, it should have been dispositive. It was the objections and "compromises" from SPS – **not made on behalf of Wells** – that were irrelevant.

The "issuing court may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena." Fed. R. Civ. P. 45(g). Because the deposition topics and the documents requested were relevant to the issue of standing and because Wells entirely failed to present any excuse, the District Court abused its discretion in failing to enter an order to show cause why Wells should not be found in contempt of Court for its failure to comply with the Subpoena either when it was initially noticed or a the later date in Salt Lake City. The District Court should also have ordered Wells to appear for a deposition and to produce to Appellant the documents requested in the Subpoena.

## XI. THE DISTRICT COURT SHOULD HAVE GRANTED APPELLANT'S MOTION TO REOPEN DISCOVERY.

The District Court abused its discretion in refusing to reopen discovery after SPS sent Mr. Bivens the **first page** of a trust document purporting to show that the holder of his note was a **different trust** that the one it had identified early – also

with only the **first page** of a trust document. See R 93. Appellant asked that if discovery was not reopened, then at least SPS should be ordered to provide the rest of each of the trust document. Most specifically, SPS should have been ordered to produce the part of each document that listed the loans that were in each trust.

Instead, the District Court held:

> Specifically, in March 2016 (while Defendant's Motion for Summary Judgment was pending in this case), Plaintiff sent SPS a request for information regarding the holder/owner of his note, and in response, SPS produced the first page of a trust document from Merrill Lynch Mortgage Investors Trust, Mortgage Loan Asset-Backed Certificates, **Series 2007-MLNl**, while SPS had previously indicated that the note was owned by the **SASCO MLNl** Trust.
> . . .
> Moreover, even if the ownership and assignment of the note are relevant at all to a RESPA claim, **the note's ownership and assignment in 2016 are not relevant to SPS's obligations**, if any, triggered by Plaintiff's December 17, 2012 letter. Accordingly, Plaintiff's Motion to Reopen Discovery [Doc. 93] is denied.

Order, R 97:8 (emphasis added). This decision was erroneous because the District Court incorrectly assume these documents were about "the note's ownership and assignment in 2016." From the face of the document, the newly revealed trust is a "Series 2007-MLNl" trust. See Motion, R 93-1. This means that it was a trust composed of loans purchased from Mortgage Lenders Network, that the purchases were in 2007 and that it was the first such trust that Merrill Lynch did that year. The "SASCO MLN1 Trust" referred to by the District Court is actually the "Structured Asset Securities Corporation Mortgage Loan Trust **2007-MLN1** Mortgage Pass-

Through Certificates Series 2007-MLN1." See Motion, R 93:2 Again, this refers to a trust formed from loans acquired from Mortgage Lenders Network in 2007.

The relevance of these trust documents is very clear – these are both trusts that, if they had Mr. Bivens' loan, would have acquired it in 2007. These documents are not about "the note's ownership and assignment in 2016;" they concern the note's ownership and assignment in 2007.

Federal Rule of Evidence 106: Remainder of or Related Writings or Recorded Statements dictates:

> If a party introduces all or part of a writing or recorded statement, an adverse party may require the introduction, at that time, of any other part--or any other writing or recorded statement--that in fairness ought to be considered at the same time.

It is clear from these two different documents, both (or neither) of which could be the owner of Mr. Bivens' loan, that there is an issue as to who the owner of Mr. Biven's loan is, and so it follows that there is an issue of who the servicer is. It was erroneous for the District Court to assume the key element of standing and to hold:

> Although Plaintiff insinuates that there are issues with the chain of title through which SPS acquired the rights to service his loan, he has not produced any evidence to support his claim.

Order, R 93:9. The District Court should have, at least, ordered SPS to produce the rest of the documents, including the list of loans in each trust.

## CONCLUSION

It is truly amazing that with all Appellant's efforts and this litigation, that such basic questions should still remain. Had the District Court not erred, they would have been answered, and Appellee would have been sanctioned under RESPA for failing to provide the requested information. Appellant asks that this Court correct the errors described above.

DATED this 31st day of August, 2015.

Respectfully submitted,

s/Wayne Charles
Wayne Charles
Georgia State Bar No. 515244

Wayne Charles, PC
395 Highgrove Dr.
Fayetteville, Georgia 30215
(770) 241-8936
(770) 460-0412 (fax)

Attorney for Appellant

## CERTIFICATE OF COMPLIANCE

I certify that this brief complies with the type-volume limitation set forth in Federal Rule of Appellate Procedure 32(a)(7)(B). This reply brief contains 12,925 words.

s/Wayne Charles
Wayne Charles

## CERTIFICATE OF SERVICE

This is to certify that I have this day served the foregoing BRIEF OF APPELLANT upon counsel of record for Appellee by filing with the ECF system.

Elizabeth J. Campbell
Alexandra M. Dishun
Locke Lord LLP
Terminus 200, Suite 1200
3333 Piedmont Rd. NE
Atlanta, GA 30305
Counsel for Select Portfolio Servicing

In addition, I have filed same with the Court of Appeals via personal delivery and via the ECF system.

DATED this 31st day of August, 2016.

s/Wayne Charles
Wayne Charles